FILED
IN OPEN COURT

APR 2 6 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:16cr20 |
| | ) | |
| ANTHONY DERRELL FOYE, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

By signing below, the parties and their respective counsel agree that if this case had gone to trial, the government's evidence would have established the following facts beyond a reasonable doubt:

1. On the night of December 27, 2015, the defendant, ANTHONY DERRELL FOYE, and his co-defendant Nathaniel Mitchell committed an armed robbery of a Shell gas station store located at 5701 Portsmouth Boulevard, in the City of Portsmouth, within the Eastern District of Virginia. Shell conducts business both inter-state and internationally, and the store offered for sale a variety of goods that had traveled in interstate commerce.

2. Color surveillance video shows the men entering the store and robbing it. The defendant and Mitchell were dressed in hooded sweatshirts and dark pants. The defendant's sweatshirt was white with a distinctive emblem on the front. Mitchell's sweatshirt was black, white, and red, also with an emblem across the front, and Mitchell's pants had a distinctive chevron pattern sewn in bright thread across the back pockets. The men wore baseball caps—the defendant's hat had a circular sticker on the top of the brim—and had the hoods of their sweatshirts pulled up over the hats. Each man had a red bandana covering his nose and the lower part of his face. When the defendant entered the store, he was holding a white-colored mobile phone. The

1



defendant told the Shell clerk that the men were robbing the store, demanded that she get behind the register and give them the money in the cash drawer, and threatened to shoot her if she did not do as he asked. Once the clerk was behind the register, she told the defendant that she had to push a button to open the register. The defendant said that if she pushed any buttons, he would kill her. He pulled up his sweatshirt to show her the butt of the handgun in his waistband. The clerk explained again that she had to push a button to get money from the register. At that point, the defendant started to count down from ten. The clerk managed to open the register and put the register tray on the counter before the countdown ended. The defendant demanded that she also retrieve any money that was under the tray in the register drawer. The clerk removed those bills as well and put them in the register tray. Both men then grabbed the cash from the tray—primarily one and five dollar bills—and left the store.

3. After the clerk called the police, told them she had been robbed, and described, among other things, the men's sweatshirts, a Portsmouth detective observed Mitchell driving a car near the Shell station and attempting to remove a sweatshirt, and saw the defendant, in the passenger's seat, wearing a white sweatshirt that fit the clerk's description. Officers attempted to stop the car, and a high-speed chase ensued. After the car nearly struck a second Portsmouth police vehicle, Mitchell stopped and both men ran on foot. Mitchell was arrested in a nearby shed by a K-9 unit. He was still wearing the jeans with the distinctive design on the back pockets. He had more than 50 one-dollar bills and one ten-dollar bill in his pocket. The hooded sweatshirt Mitchell had worn into the Shell store and a .38 special Ruger handgun were recovered from the car. The defendant ran in a different direction. While he was running, he dropped the baseball hat he had worn into the store and a .40 caliber Glock handgun. The defendant had a white mobile phone, a red bandana, two .380 cartridges, a Glock magazine, 69 one-dollar bills and 16 five-dollar

defendant told the Shell clerk that the men were robbing the store, demanded that she get behind the register and give them the money in the cash drawer, and threatened to shoot her if she did not do as he asked. Once the clerk was behind the register, she told the defendant that she had to push a button to open the register. The defendant said that if she pushed any buttons, he would kill her. He pulled up his sweatshirt to show her the butt of the handgun in his waistband. The clerk explained again that she had to push a button to get money from the register. At that point, the defendant started to count down from ten. The clerk managed to open the register and put the register tray on the counter before the countdown ended. The defendant demanded that she also retrieve any money that was under the tray in the register drawer. The clerk removed those bills as well and put them in the register tray. Both men then grabbed the cash from the tray—primarily one and five dollar bills—and left the store.

3. After the clerk called the police, told them she had been robbed, and described, among other things, the men's sweatshirts, a Portsmouth detective observed Mitchell driving a car near the Shell station and attempting to remove a sweatshirt, and saw the defendant, in the passenger's seat, wearing a white sweatshirt that fit the clerk's description. Officers attempted to stop the car, and a high-speed chase ensued. After the car nearly struck a second Portsmouth police vehicle, Mitchell stopped and both men ran on foot. Mitchell was arrested in a nearby shed by a K-9 unit. He was still wearing the jeans with the distinctive design on the back pockets. He had more than 50 one-dollar bills and one ten-dollar bill in his pocket. The hooded sweatshirt Mitchell had worn into the Shell store and a .38 special Ruger handgun were recovered from the car. The defendant ran in a different direction. While he was running, he dropped the baseball hat he had worn into the store and a .40 caliber Glock handgun. The defendant had a white mobile phone, a red bandana, two .380 cartridges, a Glock magazine, 69 one-dollar bills and 16 five-dollar



bills in his pockets. He was still wearing the distinctive hooded sweatshirt he had worn into the Shell store. After both men were arrested, the store clerk identified them as the robbers, primarily by their clothing, during separate show-up identifications.

4. The defendant is a convicted felon and as such is prohibited from possessing a firearm. On or about March 18, 2014, the defendant was convicted of burglary, in violation of Va. Code Ann. § 18.2-91. Neither of the firearms was manufactured in the states of Virginia.

5. The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case and does not identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Joseph E. DePadilla
Andrew Bosse
Assistant United States Attorneys
John F. Butler
Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*Anthony Foye*
Anthony Derrell Foye
Defendant

I am the attorney for the defendant, Anthony Derrell Foye. I have carefully reviewed the above Statement of Facts with him. His decision to enter into this factual stipulation is knowing, intelligent, and voluntary.

*Keith Kimball*
Keith Kimball, Esq.
Counsel for Defendant

