IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.  Case No. 2:16cr20-001

ANTHONY DERRELL FOYE,

        Defendant.

**POSITION OF THE DEFENDANT WITH RESPECT
TO SENTENCING FACTORS**

COMES NOW the Defendant, Anthony Derrell Foye, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report, that he has no objections to the report and states his position with respect to sentencing factors.

**PROCEDURAL BACKGROUND**

On April 26, 2016, Mr. Foye pled guilty to Counts One through Four of an Indictment filed on February 4, 2016 charging him with: Conspiracy to Interfere with Commerce by Means of Robbery in violation of 18 U.S.C. § 1951(a) – Count One, Interference with Commerce By Means of Robbery in violation of 18 U.S.C. § 1951(a) and 2 – Count Two, Brandishing a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 - Count Three and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) – Count Four.

The Pre-Sentence Report ("PSR") has been prepared and disclosed to the parties. The defense has no objections to the PSR. The Sentencing Hearing is scheduled for July 27, 2016 at 2:00 p.m.

1

At the sentencing hearing, Mr. Foye will be moving for a total sentence of no more than 120 months imprisonment which is a sentence that complies with the sentencing factors set forth in Title 18, United States Code, Section 3553(a).

## THE APPROPRIATE SENTENCE IN THIS CASE

The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). The "sufficient but not greater than necessary" requirement is not just another factor to be considered along with those set forth in § 3553(a), but instead sets an independent limit on the sentence.

Accordingly, the law must "tak[e] into account the real conduct and circumstances involved in sentencing," *Gall v. United States*, 552 U.S. 38, 54 (2007), as well as the defendant's personal history and characteristics, 18 U.S.C. § 3553(a)(1). Since the guidelines cannot do this, the Court must do so, i.e., "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 52. None of the sentencing factors are to be given greater weight than the other factors. In this case a total sentence of no more than 120 months imprisonment would be the appropriate sentence.

### Nature and Circumstances of the Offense

The nature and circumstances of the offense are thoroughly set forth in the Statement of Facts and the offense conduct section of the PSR. In essence, on December 27, 2015, Mr. Foye and Nathaniel Mitchell committed an armed robbery of a Shell gas station in Portsmouth, Virginia.

Mr. Foye and Mr. Mitchell entered the Shell store and had the clerk empty the register. Mr. Foye took approximately $211.00.[1]

Though it in no way minimizes the seriousness of this offense, it should be noted that this was not an egregious robbery. The clerk was the only person in the gas station and though Mr. Foye pulled up his sweatshirt to show the clerk the butt of his gun, neither Mr. Foye or Mr. Mitchell actually took their firearms out of their respective waistbands. *See* PSR ¶ 5. No shots were fired and the clerk was not physically harmed. Regardless, Mr. Foye recognizes the severity of his actions, is genuinely sorry for any fear that he caused the clerk to suffer and deeply regrets committing the robbery.

The Court should also note that while Mr. Foye was attributed a two point sentencing enhancement for reckless endangerment during flight by attempting to evade the police after the robbery, the car used to "flee" was driven by Mr. Foye's co-defendant, Nathaniel Mitchell, whose sentencing hearing is also scheduled for July 27, 2016. *See* PSR ¶¶ 4, 7, and 22.

## **History and Characteristics of Mr. Foye**

Anthony Foye is 24 years old. He was born in Portsmouth, Virginia and raised in the Hampton Roads area. Prior to his arrest, Anthony lived with his aunt, Kimberly Foye, in Portsmouth, Virginia.

Anthony was raised by his mother, Cheryl (nee: Foye) Ralph. Anthony does not have a relationship with his biological father and in fact, does not even know his father's occupation or whereabouts. *See* PSR ¶ 54. Despite the absence of his birth father, Anthony grew close with his

---

[1] The money is currently being held as evidence and will reportedly be returned to the Shell gas station after this prosecution is completed. *See* PSR at ¶ 8.

mother's ex-boyfriend and considered him as a father figure for a brief period in Anthony's life. *Id.* ¶ 55. One of the closest adult figures in Anthony's life was his maternal grandmother with whom Anthony spent a significant amount of time growing up. *Id.* Anthony had a very close relationship with his grandmother. *Id.* Unfortunately, when he was approximately 7 years old, his grandmother committed suicide which devastated Anthony. *Id.*

By all accounts, Anthony had a good childhood and was well provided for and loved. Anthony, though an "introverted child", enjoyed playing football and wrestling when he was growing up. *Id.* Though his mother was living as a single mom, she made sure to maintain employment so that she could provide for Anthony's needs and for those of his siblings. Today Anthony's mother works at the shipyard and is remarried and lives in Suffolk, Virginia. Anthony has three maternal half-brothers: Malcom Foye who is 27 years old and works at a warehouse in Boston, Massachusetts, Brandon Foye who is 19 and works at a Walmart, and Jamar Foye who is 22 and suffers from a development disability. At the time of arrest for the instant offense, Anthony was living with his aunt, Kimberly Foye, because he did not get along with his step-father.

Anthony has shown that he is capable of obtaining and maintaining employment. From 2010 through 2012, Anthony worked full time as a cook at Zero's in Chesapeake, Virginia. From 2012 to 2013, Anthony worked part-time as a McDonalds cook before going to jail in 2013. From January 2015 through April 2015, Anthony worked as a full-time truck unloader at Walmart in Suffolk, Virginia but did not meet the 90-day review standards. In April of 2015, Anthony began working for Remedy Staffing, a temporary agency, which placed him in numerous positions. Though he was not in a temporary position at the time of his arrest for the instant offense, the last assignment he had was working as a laborer for California Cartridge making $9.00 per hour. At

the time of his arrest for the instant offense, Anthony was working as a part-time cook at Kentucky Fried Chicken in Portsmouth, Virginia.

Starting at the age of 17, Anthony began drinking to excess but cut back upon meeting his girlfriend, Haley Sells. He tried cocaine on a few occasions and unintentionally tried heroin. He smoked marijuana from the age of 18 through 22 and began using "molly" in rock form around the age of 23 and used it sporadically prior to his arrest. *See* PSR ¶ 60.

Anthony's girlfriend has been a positive influence who helped him work towards sobriety. *Id.* At the time of his arrest, Haley was pregnant with Anthony's daughter who was born while he was incarcerated for this offense. Anthony's daughter just turned three months old. Haley believes Anthony will be a good father to their daughter. PSR ¶ 56.

Anthony's ability to maintain employment proves that he can be a contributing member of society. He admits that he has had difficulty controlling his temper and that he would like to participate in anger management. Anthony's mother and girlfriend both corroborate Anthony's trouble with anger but note that he has never received any formal help for his behavioral issues.

Anthony is a young man who is in need of tools to help him more productively deal with his struggles both internal and external. He needs drug treatment and anger management to help him be a productive member of society. Anthony also needs an education. At the time of his arrest, he was enrolled in a GED program in Portsmouth, Virginia at Woodrow Wilson High School. However, due to his incarceration, he was not able to take the exam.

Anthony knows that he needs to further his education in order to overcome the hurdles he will face with obtaining employment upon his release from prison. He plans to acquire a vocational trade/skills that will lead to steady employment once he is released from prison.

Anthony's decision to commit the instant offense was poor and perplexing. He knows that he was wrong and that he committed a serious crime. Anthony has expressed his determination to become a man and take responsibility for his actions. He fully intends to take an active role in his infant daughter's life and to work hard to become a good role model for her. Anthony will be law-abiding when he is released from prison.

**<u>Seriousness of the Offense/Promoting Respecting for the Law/Providing Just Punishment</u>**

A total sentence of no more than 120 months of imprisonment would reflect the seriousness of the offenses, promote respect for the law and more than provide appropriate and fair punishment to Mr. Foye. Despite his criminal record, a sentence within this requested range is substantially more than previous sentences imposed on Mr. Foye. In fact, the longest term of incarceration that Mr. Foye has served was 1 year and 6 months - all of which was served in a local jail. In short, Mr. Foye has never been to prison.

Though the defense in no way suggests that Mr. Foye's youth is an excuse for his crimes, his youth does weigh heavily in favor of a short sentence. First, it is instructive to highlight the body of research indicating that emotional, intellectual, and other cognitive development remain incomplete in late adolescence and early adulthood, suggesting that many young adults are more like adolescents than they are like adults in their late-20s and older. Young adults show similar impairments of judgment, susceptibility to influence of peers, and impulsivity compared to adolescents, but young adults tend to have more independence, less structure and supervision, and more access to substances of abuse compared to teens. Chronological age is a flawed proxy for developmental progress, a finding highlighted in studies of psychosocial maturity[2] of adolescents

---

[2] Psychosocial maturity is a developmental process of transition from dependency of

and young adults. One of the factors associated with slowed psychosocial maturity development included disruptions in household stability. Further, a recent (September 2015) report from the National Institute of Justice (NIJ) was unambiguous about the implications of psychological and criminology research for the justice system's response to criminal behavior in young adults:

> Whenever possible, young adults should be kept in the community… positive growth and behavior should be anticipated, and incentivized… Incarceration is the most expensive and least effective sentencing option for young adults. However, for cases in which incarceration is the final outcome, sentence lengths should be shorter and more intensely rehabilitative… Young inmates or parolees should be incentivized with "merit time" provisions that reduce their terms of incarceration or parole for participation in promising educational, vocational, or rehabilitative programs.

*See* Schiraldi, V., Western, B., & Bradner, K. Community-Based Responses to Justice-Involved Young Adults. New Thinking in Community Corrections Bulletin. Washington, D.C.: U.S. Department of Justice, National Institute of Justice, 2015. NCJ 248900.

Finally, a sentence within the range requested by the defense is a substantial sentence of incarceration and would more than serve to promote respect for the law.

### **Overstatement of Criminal History/Deterrence and Protecting the Public**

Mr. Foye requests that the Court grant him a downward departure for over-representation of the seriousness of his criminal history. U.S.S.G. §4A1.3(b)(1) provides the standard for downward departures based on an overstated criminal history. It states:

---

childhood/adolescence to the self-sufficiency of adulthood. Attaining psychosocial maturity includes accomplishing mastery and competence, developing stable social relationships, and creating a positive sense of self-worth related to moral and responsible behavior even in the absence of external supervision. Researchers report that transition to successful adulthood is most likely to occur when individuals are able to make substantial progress toward these goals between the ages of sixteen and twenty-four.

> " . . . [i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

U.S.S.G. § 4A1.3(b)(1).

The fact that a defendant's criminal history category overstates the seriousness of his actual criminal history is a well-recognized basis for downward departure. *United States v. Hall*, 977 F.2d 861, 866 (4th Cir. 1992)(recognizing that overstatement of a defendant's criminal history may be a proper basis for a downward departure); *United States v. Summers*, 893 F.2d 63, 67 (4th Cir. 1990) (affirming downward departure based on criminal history). As the Fourth Circuit explained in *United States v. Atkins*, 937 F.2d 947 (4th Cir. 1991):

> "Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses with a reasonable degree of precision, mathematically accurate evaluation of the countless possible permutations of criminal history, involving offenses high and petty committed in numerous jurisdictions, would be at best unwieldy. The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score.

Atkins, 937 F.2d at 952; *accord Summers*, 893 F.2d at 67. In *Summers*, for example, the Fourth Circuit affirmed a downward departure on the ground that the defendant's criminal history category overstated the severity of the defendant's criminal history, which included "convictions for grand larcenies, possession of narcotics, a weapons violation, driving with a suspended license violations, and probation revocation." 893 F.2d at 65, 68 (approving the exclusion of the defendant's driving offenses from the determination of the criminal history category). Similarly, in *United States v. Nelson*, 166 F. Supp.2d 1091 (E.D. Va. 2001), the District Court granted a

8

horizontal departure from CAC VI to CAC III where the defendant's criminal history score was "derived primarily from motor vehicle offenses and convictions for minor offenses." *Id.* at 1093.

Mr. Foye has been placed in a Criminal History Category V based primarily on five misdemeanor convictions. These convictions include resisting arrest after being stopped for underage possession of alcohol, trespassing, destruction of property, and carrying a concealed weapon. He has accumulated enough criminal history points for his present category but has not served any substantial periods of incarceration. As mentioned above, the mandatory minimum alone would be significantly more than Mr. Foye has ever served. In fact, the requested sentence would be over five times that of the longest period of incarceration that Mr. Foye has ever served. For these reasons, the defense respectfully suggests that Criminal History Category IV is a more accurate description of the seriousness of Mr. Foye's criminal history.

The sentence requested by the defense is more than sufficient to deter Mr. Foye from engaging in any other criminal activity and to deter others who contemplate committing this serious crime. Mr. Foye has never spent even a day in prison. A sentence of 10 years will be significantly more than he has ever served. "Generally, a lesser period of imprisonment is required to deter a defendant who was not previously subject to lengthy incarceration, than is necessary to deter a defendant who has already served serious time yet continues to re-offend." *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005). Thus, the sentence requested is sufficient for Mr. Foye to "get the message" that he cannot engage in this sort of behavior upon his release from prison.

As a result of his actions, Mr. Foye, a young father of 24, will be at the very least in his early 30s by the time he reenters society. He will have had time to develop mentally and

9

emotionally. This time will undoubtedly make a significant impact on Mr. Foye and strongly drive home the seriousness of the offenses and all that he has to lose if he ever commits a crime again in the future.

The sentence requested is also sufficient to protect the public from Mr. Foye. Despite his criminal history, he has shown an ability to work and be law abiding. Further, he has recently become a father and intends to be a good role model for his daughter moving forward. True, he has made unfortunate decisions as he struggled to deal with anger management as well as the pressures of young adulthood. His time in prison will not only allow his brain to fully develop, but will also give him time to achieve an education and vocational training so that he will reemerge with the tools to be a more productive member of society.

A total sentence of 10 years for these offenses is a substantial period of incarceration. After serving such a sentence, Mr. Foye is unlikely to recidivate in the future. This sentence is also severe enough to be a significant deterrent to Mr. Foye and to others contemplating committing robberies.

It should also be noted that Mr. Foye faces additional incarceration in the state system due to the instant offense. That is because he faces a probation revocation in the Chesapeake Circuit Court. *See* PSR ¶ 36.

**Providing Needed Educational/Vocational Training/Medical Care/Correctional Treatment**

As noted in the PSR and detailed in the "History and Characteristics" section of this pleading, Mr. Foye has struggled with both anger management and with substance abuse. He had been enrolled in a GED program but was unable to complete the program and be awarded a GED that he was working towards due to his arrest for this offense. Finally, Mr. Foye's employment

history consists of part-time work in the fast food industry and labor jobs. He unquestionably needs to further his education and job skills so that he can provide for his family.

The sentence sought by the defense is sufficient to provide Mr. Foye with needed treatment for his substance abuse and to provide him with anger management tools. Most importantly, if granted this sentence, Mr. Foye would still be incarcerated long enough to benefit fully from the programs offered in the Bureau of Prison (i.e. to receive educational and vocational training), but also be released back into society within a period of time that would allow him to promptly put the skills he gains to good use. This would further his ability to be a productive member of society and provide him better opportunities to support himself upon his release.

## Kinds of Sentences Available/Sentencing Range and Guideline Policies

Counts One and Two have a statutory range of punishment of up to twenty (20) years imprisonment and a maximum of three (3) years of supervised release. Count Three has a statutory range of seven (7) years to life imprisonment that has to be served consecutive to Counts One, Two and Four. Count Three also has a maximum of five (5) years of supervised release. Count Four has a statutory range of punishment of up to ten (10) years imprisonment and three (3) years of supervised release. The guideline range recommends a term of incarceration of 63 to 78 months plus 84 months consecutive. Of course, this guideline range is advisory.

## Unwarranted Sentencing Disparity

The factor of avoiding unwarranted sentencing disparity encourages guideline sentences and thus has the practical effect of improperly elevating this sentencing factor over the other factors of § 3553(a). This factor was one of the driving reasons behind the adoption of the Guidelines. While unwarranted sentencing disparity is a laudable goal, strict adherence to the Guidelines shifts

the focus away from the individual defendant being sentenced. Moreover, strict adherence to this particular factor results in the guidelines being *de facto* mandatory.

Despite being a below guidelines sentence, the sentence requested by the defense would not result in any significant sentencing disparity. Courts have noted that a departure from guideline sentences do not need to be supported by unusual circumstances, as a pre-Booker departure would; rather all that is necessary is "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005) (citing *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)).

A sentence within the guideline range is too harsh considering the nature and circumstances of this offense. Mr. Foye and Mr. Mitchell did not point their guns at the store clerk, did not physically restrain or abduct her and though the crime itself is violent, this was not a particularly egregious robbery. Given the facts and circumstances of the offense as well as the history and characteristics of Mr. Foye, a sentence of no more than ten years is significantly more appropriate than a guideline sentence and sufficiently addresses all of the sentencing factors.

## **Conclusion**

For the reasons advanced above, Mr. Foye respectfully moves for a total sentence of no more than 120 months imprisonment. Such a sentence is sufficient to comply with the factors set forth in 18 U.S.C. § 3553(a).

    Respectfully submitted,

    ANTHONY DERRELL FOYE

    By_____/s/_____
    Keith Loren Kimball

VSB No. 31406
Supervisory Assistant Federal Public Defender
Attorney for Defendant Anthony Derrell Foye
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0800 (telephone)
757-457-0880 (telefax)
Email: keith_kimball@fd.org

## CERTIFICATE OF SERVICE

I certify that on this 21st day of July, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Joseph E. Depadilla, Esquire
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Joe.Depadilla@usdoj.gov

Andrew Bossee, Esquire
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Andrew.Bosse@usdoj.gov

And I hereby certify that I have electronically mailed and mailed the document by U.S. Mail to the following non-filing user:

Leah D. Greathouse
United States Probation Officer
600 Granby Street, Suite 230
Norfolk, Virginia 23510
Email: leah_greathouse@vaep.uscourts.gov

/s/
Keith Loren Kimball
VSB No. 31046
Attorney for Defendant Anthony Derrell Foye
Supervisory Assistant Federal Public Defender
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0870 (telephone)
757-457-0880 (telefax)
Email: keith_kimball@fd.org